IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| ZACHARY D. LEONARD. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:25-cv-00010-O |
| | § | |
| CITY OF BURKBURNETT, TEXAS, | § | |
| LAWRENCE CUTRONE and EDDIE STAHR, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S FIRST[1] AMENDED COMPLAINT**

Zachary D. Leonard complains of the City of Burkburnett, Texas; Lawrence Cutrone; Eddie Stahr; Michael Guevara; Fred Tillman; and their successor public officers, and he shows:

**Introduction**

1.    Plaintiff Zachary D. Leonard was a police officer employed by Defendant City of Burkburnett, Texas when he was wrongfully terminated on April 25, 2019 in retaliation for exercising his First Amendment right to free speech, his right to freely assemble, his right to freely associate with like minded individuals, and his right to engage in political activities, which deprivations also violated Leonard's rights guaranteed by the Texas Constitution.

2.    As a citizen and member of the Burkburnett Police Association ("Association"), Plaintiff began speaking and advocating publicly in 2018 to correct abusive, retaliatory, and illegal behavior by supervisors at the Burkburnett Police Department, including Police Chief Eddie Stahr.

---

[1]This case was removed from the 30th District Court in Wichita County, Texas.  Plaintiff makes his first complaint in federal court and this pleading is identified as such.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 1**

LEONARDAMENDEDCOMPLAINT1.wpd

3.      Plaintiff and other Association members also undertook a campaign to hold a referendum in Burkburnett, Texas to approve civil service protection for City of Burkburnett police officers, which the City's leadership and the Police Department leadership strongly opposed, including by retaliation against police department employees, like Plaintiff, who advocated for civil service.

4.      Plaintiff's wrongful termination from employment by Defendant City, which was accomplished illegally by the coordinated illegal actions of the individual Defendants was accomplished under color of law as the individual Defendants abused their authority.

5.      Defendant City, by its Board of Commissioners as final policy maker for the City, authorized and approved the illegal actions of the individual Defendants who violated Plaintiff's civil rights.

6.      Since Plaintiff's illegal and wrongful termination, Defendants continue to retaliate against Leonard for his speech and political activities.  Defendants have undertaken a years-long effort to conceal evidence as they refused to comply with discovery obligations while this lawsuit was in state court, which Leonard alleges is a further effort to avoid responsibility for their illegal actions.

**Amendment as a Matter of Course**

7.      Plaintiff Leonard amends his claims as a matter of right and as a matter of course under FED. R. CIV. P. 15(a)(1)(B) within 21 days of Defendant's Notice of Removal, which is also Plaintiff's effort to revise his pleadings that were filed under the Texas "notice pleading" standard in order to meet the pleading requirements under FED. R. CIV. P. 8.

8.      Plaintiff alleges that all of his claims relate back to the time of his Original Petition, or as necessary and applicable to subsequent amendments, as allowed by FED. R. CIV. P. 15(c).

9.      Plaintiff alleges that for claims against individual Defendants in their official capacities as public officers, when such individual Defendants have left the office they held at the time of events

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 2**

LEONARDAMENDEDCOMPLAINT1.wpd

giving rise to Plaintiff's claims, the current office holder should be substituted for the individual

Defendants in their official capacities who are no longer public offices, as required by FED. R. CIV.

P. 25(d), while claims in personal capacities continue against those original Defendants.

## Parties

10.     Plaintiff Zachary D. Leonard resides in Wichita County, Texas.

11.     Defendant City of Burkburnett, Texas ("the City") has appeared in this action.

12.     Defendant Lawrence Cutrone ("Cutrone") has appeared in this action.

13.     Defendant Eddie Stahr ("Stahr") has appeared in this action.

14.     Defendant Michael Guevara ("Guevara") has appeared in this action.

15.     Defendant Fred Tillman ("Tillman") has appeared in this action.

## Venue and Jurisdiction

16.     Venue is proper in the Northern District of Texas because the cause of action accrued in the

Northern District of Texas.

17.     The Court has jurisdiction under 28 U.S.C. § 1331 because some of Plaintiff's claims arise

under federal law, including 42 U.S.C. § 1983 for violations of his First Amendment rights and

under 28 U.S.C. § 2201, § 2202 and § 2412 on his claims for injunctive relief, for costs and fees.

## Waiver/Lack of Immunities

18.     The Defendants are not immune from suit, nor are they immune from liability, because the

actions and omissions of all of the Defendants, and the actions and omissions of other agents and

employees of Defendant City, were accomplished at the direction of the final policy maker of

Defendant City and/or pursuant to a practice or policy of Defendant City, and the actions and

omissions of these Defendants deprived Plaintiff of his rights without due course of law.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 3**

LEONARDAMENDEDCOMPLAINT1.wpd

19.     Plaintiff's rights have been and will continue to be damaged and/or denied by Defendants' failures to obey Texas law and federal law, these damages may not be compensated under Texas law due to immunities, and these damages are therefore, irreparable damages under Texas law.

20.     The Texas Constitution, Art. I, § 3, states "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive, separate public emoluments, or privileges, but in consideration of public services."; while Art. I, § 19, states "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land".

21.     Plaintiff's claims in equity, for injunctive relief, for declaratory relief and for mandamus relief are allowed by Texas Constitution Art. I, § 29 and these claims are allowed under federal law.

22.     Defendants have no sovereign immunity, no government immunity, no official immunity, no qualified immunity and no statutory immunity because their acts and omissions were accomplished at the direction of and with the approval of Defendant City's final policy maker, which actions and omissions were accomplished in violation of Texas law.

23.     The individual Defendants have no immunity for their illegal actions and omissions, including their false accusations, abuse of authority, and official oppression of Plaintiff; the wrongful termination of Plaintiff; the illegal refusal to hear Plaintiff's grievance; the refusal to rescind Plaintiff's wrongful termination; the abuse of authority and official oppression purporting to direct an investigation of Plaintiff under TEXAS GOVERNMENT CHAPTER 614, when no actual investigation was completed; the abuse of authority and official oppression by directing that Plaintiff be issued a "General Discharge" Texas Commission on Law Enforcement ("TCOLE") F-5 when a "General Discharge" was not warranted; and the abuse of authority and official oppression by failing to

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 4**

LEONARDAMENDEDCOMPLAINT1.wpd

accomplish any actual investigation under TEXAS GOVERNMENT CHAPTER 614 before Plaintiff was issued a fraudulent "General Discharge" TCOLE F-5, because these illegal acts and omissions were purportedly undertaken as agents or employees of Defendant City or to benefit Defendant City, and with the knowledge and approval of the final policy maker of Defendant City.

24.    These actions and omissions were clearly illegal and they violate Cutrone's, Stahr's, Guevara's, and Tillman's individual duties to follow the law.

25.    Defendant Cutrone's, Defendant Stahr's, Defendant Guevara's, and Defendant Tillman's illegal actions and omissions were not in the course and scope of employment or agency with Defendant City, as these Defendants' employment or agency does not authorize, nor include illegal acts, and these Defendants' actions and omissions were *ultra vires* actions and omissions.

26.    Defendant Cutrone, Defendant Stahr, Defendant Guevara, and Defendant Tillman have no qualified immunity for their illegal actions and omissions punishing Plaintiff's speech on matters of significant public concern and punishing his political activities, because "by January 1992 at the latest, it was clearly established that 'a public employer cannot act against an employee'" for the employee's speech or political activities.[2]

27.    Plaintiff is also not limited to *ultra vires* claims over the individual Defendants' violations of ministerial duties and legal duties, as these Defendants collectively acted "without legal authority" in terminating Plaintiff and depriving him of statutory and constitutional rights.[3]

28.    Defendant Stahr's false accusations, abuse of authority, and official oppression of Plaintiff;

---

[2]*Brady v. Fort Bend County*, 145 F.3d 691, 696-97 (5th Cir. 1998); *Click v. Copeland*, 970 F.2d 106, 108 (5th Cir. 1992); and *Vojvodich v. Lopez*, 48 F.3d 879, 882, 887 (5th Cir. 1995).

[3]*City of El Paso v. Heinrich,* 284 S.W.3d 366, 372 (Tex. 2009).

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 5**

LEONARDAMENDEDCOMPLAINT1.wpd

Defendant Cutrone's wrongful termination of Plaintiff and his refusal to hear Plaintiff's grievance; Defendant Cutrone's, Defendant Tillman's, and Defendant Guevara's extortion, abuse of authority and official oppression of Plaintiff, by purporting to investigate Plaintiff under TEXAS GOVERNMENT CHAPTER 614, when no investigation was conducted; Defendant Cutrone's, Defendant Tillman's, and Defendant Guevara's abuse of authority and official oppression by directing that Plaintiff be issued a "General Discharge" TCOLE F-5 when a "General Discharge" was not warranted; and these Defendants' abuse of authority and official oppression by failing to accomplish any actual investigation under TEXAS GOVERNMENT CHAPTER 614 before Plaintiff was issued a fraudulent "General Discharge" TCOLE F-5 , were retaliation and/or punishment for speech and political activities Defendants disagree with or disapprove.

29.     Plaintiff's termination was a wrongful termination; the wrongful termination was illegal, arbitrary, and violated Plaintiff's constitutional right to free speech, his constitutional right to free association, his constitutional right to freely assemble, and his constitutional right to due course of law; and Plaintiff's wrongful termination in violation of his statutory and constitutional rights was approved and/or ratified by the final policy maker of Defendant City.

30.     Defendant City's policy that denied Plaintiff a hearing on his grievance was and is illegal, arbitrary, and the policy improperly deprives Plaintiff of his grievance rights and the policy improperly deprives Plaintiff of his right to seek redress of grievances.

31.     Defendant Cutrone's wrongful termination of Plaintiff and his refusal to hear Plaintiff's grievance to challenge his wrongful termination was illegal, arbitrary, and violated Plaintiff's constitutional rights to free speech, to free association, to freely assemble, to due course of law; and improperly denied Plaintiff's grievance rights.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 6**

32.    Defendant Cutrone's denial of Plaintiff's rights was the official policy of the final policy-maker of Defendant City, or was approved and/or ratified by the final policy-maker, or alternatively, Cutrone's illegal actions were so well known that the illegal practice was and/or is the *de facto* policy of Defendant City.

33.    Defendant Stahr's official oppression of Plaintiff, initiating retaliatory transfers and other retaliation was illegal, arbitrary, and violated Plaintiff's constitutional rights to free speech, to free association, to freely assemble, to due course of law; and denied Plaintiff's grievance rights.

34.    Defendant Stahr's official oppression of Plaintiff and his violations of Plaintiff's constitutional rights was the official policy of the final policy-maker of Defendant City, or was approved and/or ratified by the final policy-maker, or alternatively, Stahr's illegal actions were so well known that they were and/or are the *de facto* policy of Defendant City.

35.    Defendant Guevara's extortion, abuse of authority, official oppression directing an improper Chapter 614 investigation of Plaintiff, the improper handling of the fraudulent TCOLE F-5 issued to Plaintiff, and other retaliation by Guevara was illegal, arbitrary, and violated Plaintiff's constitutional rights to free speech, to free association, to freely assemble, to due course of law; and denied Plaintiff's grievance rights.

36.    Defendant Guevara's illegal actions were the official policy of the final policy-maker of Defendant City, or were approved and/or ratified by the final policy-maker, or alternatively, his illegal actions were so well known that they were and/or are the *de facto* policy of Defendant City.

37.    Defendant Tillman's abuse of authority, official oppression directing an improper Chapter 614 investigation of Plaintiff, his issuing the fraudulent TCOLE F-5 to Plaintiff, and other retaliation by Tillman was illegal, arbitrary, and violated Plaintiff's constitutional rights to free speech, to free

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 7**

LEONARDAMENDEDCOMPLAINT1.wpd

association, to freely assemble, to due course of law; and denied Plaintiff's grievance rights.

38.    Defendant Tillman's illegal actions were the official policy of the final policy-maker of Defendant City, or were approved and/or ratified by the final policy-maker, or alternatively, his illegal actions were so well known that they were and/or are the *de facto* policy of Defendant City.

39.    Plaintiff sues Defendant Cutrone, Defendant Stahr, Defendant Guevara, and Defendant Tillman in their official capacities and as individuals in their personal capacities.

40.    Plaintiff's requests for reinstatement, for injunctive relief, declaratory relief and mandamus relief are allowed by Texas law, as claims in equity against the government and government officials who act without legal or statutory authority, which acts were clearly illegal.[4]

41.    As Defendants' actions and omissions were taken without legal authority, and without statutory authority, this lawsuit does not implicate the sovereign-immunity doctrine[5], nor are any other immunities applicable to Defendants.

42.    Defendants Cutrone, Stahr, Guevara, and Tillman are not entitled to qualified immunity, because "[b]y at least 2014, it was clearly established that an employee's speech made externally concerning an event that was not within his or her job requirements was entitled to First Amendment protection." *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016).

43.    Defendants Cutrone, Stahr, Guevara, and Tillman are not entitled to qualified immunity, because by "1987 it was clear that the First Amendment protects an employee's right to associate with a union." *Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 748 (5th Cir. 1993).

44.    Defendants Cutrone, Stahr, Guevara, and Tillman are not entitled to qualified immunity,

_____

[4]*Texas Educ. Agency v. Leeper,* 893 S.W.2d 432 (Tex. 1994).

[5]*Cobb v. Harrington,* 190 S.W.2d 709, 712 (Tex. 1945).

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 8**

LEONARDAMENDEDCOMPLAINT1.wpd

because "[t]he law was established clearly enough in [the Fifth Circuit] in January 1988 that a reasonable officer should have known that if he retaliated against an employee for exercising his First Amendment rights, he could not escape liability by demoting and transferring the employee rather than discharging him."*Click v. Copeland*, 970 F.2d 106, 111 (5th Cir. 1992).

45.    Defendants Cutrone, Stahr, Guevara, and Tillman are not entitled to qualified immunity, because "[a]s far back as 1985, the established law in [the Fifth Circuit] has been that a public employer cannot retaliate against an employee for expression protected by the First Amendment [and] by January 1992 at the latest, the law was equally clear that ... a public employer cannot act against an employee because of the employee's [political activities]". *Vojvodich v. Lopez*, 48 F.3d 879 (5th Cir. 1995).

46.    Defendants Cutrone, Stahr, Guevara, and Tillman are not entitled to qualified immunity, because Congress enacted Section 1 of the Civil Rights Act of 1871 (now 42 U.S.C. § 1983) intending that "[r]ights-violating state actors are liable-period-notwithstanding any state law to the contrary." *Rogers v. Jarrett*, 63 F.4th 971, 980 (5th Cir. 2023).  As Congress intended that no immunities would bar civil rights claims, qualified immunity does not apply to bar Plaintiff's claims under 42 U.S.C. § 1983, and discovery should not be stayed.

**Exercise of Administrative Remedies**

47.    Plaintiff complains of illegal act by Defendant Cutrone, Defendant Stahr, Defendant Guevara, Defendant Tillman, and Defendant City's ratification of illegal act by agents and employees.

48.    The illegal actions by individual Defendants were retaliation for Plaintiff's speech as a citizen and in retaliation for Plaintiff's political activities advocating for civil service protections for employees of Defendant City's police department.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 9**

LEONARDAMENDEDCOMPLAINT1.wpd

49.    The illegal retaliation violates Plaintiff's free speech rights, including his right to speak on matters of public concern.

50.    The illegal retaliation violates Plaintiff's right of free association.

51.    The illegal retaliation violates Plaintiff's right to procedural due process, as Defendants denied Plaintiff notice and hearing before he was wrongfully terminated.

52.    The refusal by Defendants to consider and/or properly consider Plaintiff's request that his termination be rescinded violates Plaintiff's right to petition.

53.    The refusal by Defendants to consider and/or properly consider Plaintiff's request that his termination be rescinded violates Plaintiff's statutory grievance rights.

54.    Plaintiff's complaints about Defendants' violations of his free speech rights; the violations of his right of association; the violations of his procedural and substantive due process rights; the denial of his right to petition; and violations of other civil and statutory rights, do not require any exercise of administrative remedies, although Plaintiff has attempted to grieve his wrongful termination, which grievance effort was refused by Defendants.

**Factual Allegations**

55.    Plaintiff was employed by the City of Burkburnett as a police officer from July 16, 2005 until he was wrongfully terminated on April 25, 2019.

56.    Plaintiff's termination was due to the exercise of his free speech rights and/or his exercise of his right to free association.

57.    While employed by the City, Plaintiff was a founding member of the Burkburnett Police Association ("Association").

58.    In June 2018, Plaintiff was re-elected Secretary-Treasurer of the Association after having

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 10**

LEONARDAMENDEDCOMPLAINT1.wpd

served in that position twelve consecutive terms.

59.     In July 2018, the Association conducted a Morale and Management Survey at the Burkburnett Police Department that identified significant issues at the department.

60.     The Survey identified significant morale issues and leadership deficiencies at the department, including that more than 60% of employees polled believed police department leadership did not support receiving employee input; that more than 78% of employees polled feared retaliation by police department leadership for expressing opinions about issues of concern; that 75% of employees polled had little confidence in Lieutenant Lahoma Vaughan's ability to lead the department into the future; that more than 70% of employees polled believed discipline was not handled consistently for all department employees; and that more than 82% of employees polled believed morale at the Burkburnett Police Department was low.

61.     Immediately after taking the Survey, Lieutenant Lahoma Vaughn called the TMPA to complain that the survey was biased against her, apparently because the Survey results did include numerous complaints and criticisms about Lieutenant Vaughn's actions and conduct.

62.     Around September 6, 2018, these results of the Survey, identifying the significant morale issues and leadership deficiencies at the department, were presented to Defendant Stahr who initially said he would make changes in the department to correct the identified issues, including that he would reassign, demote, or terminate Lieutenant Vaughn.

63.     Also around September 6, 2018, the leadership of the Association, which included Plaintiff, began meetings with City Manager Mike Whaley and various City Commissioners to notify these City leaders of the significant morale issues and leadership deficiencies at the department.

65.     Late in the Summer of 2018, the Association undertook an effort to obtain voter approval for

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 11**

LEONARDAMENDEDCOMPLAINT1.wpd

civil service at the Burkburnett Police Department.

66.    Plaintiff was the primary participant in the effort to obtain approval for civil service.

67.    The Association's effort to obtain approval for civil service that Plaintiff participated in included purchasing and placement of signs and door hangers in the City of Burkburnett promoting and advocating for voter approval for civil service at Burkburnett Police Department.

68.    Leadership at the Burkburnett Police Department, including Defendant Stahr, opposed the Association's effort to obtain voter approval for civil service at the department.

69.    In response to the reports of issues and deficiencies at the police department, in direct reaction to the Association's effort to obtain civil service, on October 1, 2018, Defendant Stahr ordered a retaliatory transfer of Plaintiff from the Patrol Division to a position as a desk detective.

70.    This was the first of the retaliatory transfers of Plaintiff by Defendant Stahr.

71.    Stahr's hostility directed at Association members advocating publicly against deficiencies at the police department and his anger at those Association members, like Plaintiff, who were advocating for civil service was palpable and plainly evident to all who encountered him at this time.

72.    Because Plaintiff and other Association members were talking to the City Manager and the City Commissioners, Stahr expressed his anger at members of the Association, including Plaintiff Leonard, for taking department issues outside the department.

73.    Stahr complained that Association members were "taking [police] business outside [the walls of the Police Department]" and he questioned, "Who's running this place, me or the Association?"

74.    Sometime after October 1, 2018, Chief Stahr became the subject of an inquiry into a series of inappropriate telephone calls and/or text messages between Chief Stahr and other City of Burkburnett employees, including former Water Department Supervisor Francine Neff.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 12**

LEONARDAMENDEDCOMPLAINT1.wpd

75.    After a TEXAS PUBLIC INFORMATION ACT request was submitted by TMPA for Chief Stahr's personal mobile telephone records, Chief Stahr said he was "going to call Jake" to request advice on how to redact or prevent the release of his personal mobile telephone records.

76.    Stahr was referring to his long-time and close friend Texas Department of Public Safety Ranger Jake Weaver.

77.    Plaintiff Leonard personally witnessed a meeting between Stahr and Weaver in Stahr's office at the Burkburnett Police Department where Weaver provided Stahr advice on how to redact or prevent the release of his personal mobile telephone records, which Plaintiff believed was a violation of Texas law, including the TEXAS PUBLIC INFORMATION ACT.

78.    On October 16, 2018, Dick Brock of TMPA submitted a TEXAS PUBLIC INFORMATION ACT request for City of Burkburnett election information to City Clerk Janelle Stahr, who was the wife of Defendant Ed Stahr.

79.    On November 19, 2018, the Board of Commissioners met in a regular meeting and voted to terminate City Manager Mike Whaley three days before Thanksgiving.

80.    The Commissioners replaced Whaley as City Manager with City Public Works Director Lawrence Cutrone, who was far less experienced and far less qualified than Whaley.

81.    City Manager Whaley had worked his way up through the ranks as a rank-and-file City employee, and was viewed as too sympathetic to fellow City employees, including members of the Burkburnett Police Association.

82.    Plaintiff alleges the Commissioners installed the unqualified and inexperienced Cutrone as City Manager to oppose the Association's effort to obtain civil service and to lead the retaliation against Association members who were advocating for civil service.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 13**

LEONARDAMENDEDCOMPLAINT1.wpd

83.    Starting in December, 2018, members of the Association issued and began circulating a petition supporting adoption of the police officers' civil service law.

84.    Dick Brock of TMPA cautioned Association members that City officials and leaders were likely to retaliate against members of the Association, and that things would "get worse before they get better."

85.    Also in December 2018, Mayor Carl Law spoke with officers of the Association, Matt McDonald, President; and Blake Deeb, Vice President) to explain his belief that the Burkburnett City Charter allows the City Manager to supervise the police department.

86.    Mayor Law explained that the City leaders, including the Commissioners, opposed giving civil service to Burkburnett police officers because he said civil service conflicted with the City Manager's ability to "exercise supervision and control" over the police department.

87.    Mayor Law also indicated the City would require signatures from "twenty percent of the total qualified electors" on any petition to obtain a referendum for civil service, instead of "a number of qualified voters of the municipality equal to at least 10 percent of the number of voters who voted in the most recent municipal election" as required by TEXAS LOCAL GOVERNMENT CODE § 143.004.

88.    Mayor Law made clear that the City would take steps it could to defeat the petition supporting adoption of the police officers' civil service law and would fight the referendum.

89.    On December 14, 2018, the Burkburnett Police Association published a post to Facebook supporting adoption of the police officers' civil service law.

90.    On December 17, 2018, the Association held a meeting, where President Matt McDonald discussed meeting with Tony Rike of TMPA and Chief Stahr, where Stahr acknowledged that he would make changes suggested by the Association members after the holidays.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 14**

LEONARDAMENDEDCOMPLAINT1.wpd

91.    Also on December 17, 2018, the City Commissioners met in a regular meeting and discussed the Association petition for civil service.

92.    Commissioner Josh Andrajack asked City Manager Cutrone to "educate" the Commissioners to better understand what the Association was seeking and what it meant to the citizens.

93.    Andrajack was continuously outspoken and very vocal, widely publicizing his opposition to Civil Service in public, on social media, in the news media, and in official City meetings and forums.

94.    Andrajack got into a heated exchange with Dick Brock from TMPA regarding Civil Service at an official forum, which prompted TMPA to respond with a detailed magazine article detailing the various falsehoods that Andrajack publicly stated about civil service.

95.    Commissioner Bill Lindenborn was similarly outspoken publicly stating his opposition to Civil Service in public, on social media, in the news media, and in official City meetings and forums.

96.    Commissioner Bill Lindenborn placed an enormous banner opposing civil service on his fence that faces a main thoroughfare in the City of Burkburnett.

97.    Commissioner Randy Brewster stated in the local newspaper that there were significant problems within the Police Department that the Association brought to light, but Brewster still expressed his opposition to any civil service for police officers.

98.    Defendant City posted literature opposing civil service on social media and distributed advertising opposing civil service in residents' water bills in the time leading to the referendum.

99.    Defendant City also hired a "consultant", Robert Jones, to give a presentation opposing civil service at a City forum.

100.    Plaintiff alleges the Commissioners and Cutrone used the December 17, 2018 meeting, as well as other meetings, to develop their strategy of retaliation against Association members and their

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 15**

strategy to defeat the Association effort to obtain civil service for Burkburnett police officers.

101.    On December 27, 2018, Association officers of the Matt McDonald and Blake Deeb met with City Manager Cutrone while off-duty to discuss significant problems in the Police Department.

102.    Cutrone asked about the problems and recommended solutions from members of the Association and he said he would address as soon as possible, because Cutrone wanted the "issues confronted and taken care of within the month."

103.    The words and actions by Mayor Law, City Manager Cutrone, and the City Commissioners expressing and demonstrating opposition to civil service created and extreme fear of retaliation among the advocates for civil service among the Association members.

104.    The opposition by Burkburnett Police Department leadership to the Association's and Plaintiff's efforts to obtain civil service was consistent with the opposition to civil service by the Burkburnett Board of Commissioners.

105.    The majority of the Commissioners, the City Mayor, and other City officials, including the City Manager, City Attorney, Police Chief, and Police Lieutenant were all actively fighting against civil service and the Association members, like Plaintiff, who were speaking out and engaging in other political activities to obtain civil service for Burkburnett police officers.

106.    Opposition to civil service by the police department and Board of Commissioners led to retaliation against Association members, including shift changes; threats of demotions; restrictive policy changes; suspensions of special assignments; and re-allocations of grant funding, and Plaintiff did in fact suffer through retaliatory transfers in retaliation for his work to obtain civil service for Burkburnett police officers.

107.    The retaliation and threats of further retaliation by Defendant Stahr against Plaintiff and other

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 16**

Association members, was intended to punish Plaintiff and other Association members for exercising

their free speech rights and espousing political positions Defendant City disapproved.

108.    Defendant Stahr told Association members, including Plaintiff, there were "going to be some

changes" and consequences for "1 going above [his] head."

109.    Stahr also said, despite the results of the Survey, he maintained complete faith in Lieutenant

Vaughn as a supervisor.

110.    Stahr rescinded his earlier statement to the officers of the Association and said he had no

inclination to reassign, demote, or terminate Lieutenant Lahoma Vaughn as long as he was in charge

of the department.

111.    While public debate over civil service at the police department was ongoing, Plaintiff played

in an annual alumni soccer game at Burkburnett High School on December 29, 2018.

112.    During this soccer game, Plaintiff inadvertently collided with a 17-year-old player on the

opposing team, causing both the Plaintiff and the other player to suffer injuries.

113.    There was nothing unusual or extraordinary about this physical contact during the soccer

game, as injuries are an ordinary, unfortunate part of the sport that sometimes occur.

114.    Around this time, on January 2, 2019, the Association President and Vice President met with

Defendant Cutrone and Plaintiff Leonard met with Commissioner Don Hardy to report significant

problems at the police department.

115.    Defendant Stahr imposed another retaliatory transfer on Plaintiff from the Criminal

Investigative Division to the Patrol Division evening shift.

116.    Plaintiff was told by Defendant Stahr that Plaintiff would be subjected to a retaliatory internal

affairs investigation of the soccer game collision.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 17**

LEONARDAMENDEDCOMPLAINT1.wpd

117.    On January 2, 2019, Defendant Stahr admitted "the Burkburnett Police Department has not initiated an administrative investigation" and the complaint was never provided to Leonard.

118.    During the late winter and into the spring of 2019, retaliation by Defendants was continued against police employees who voiced support for civil service.

119.    This retaliation by Defendants violates TEXAS LOCAL GOVERNMENT CODE § 180.001, which prohibits coercion of a police officer in connection with a political campaign.

120.    On January 8, 2019, Chief Stahr called a mandatory meeting of supervisors and he discussed numerous safety issues brought forth by members of the Association, including the Department's substandard radio communication systems, inconsistent disciplinary standards, outdated equipment, obsolete (expired) ballistic vests, insufficient staffing, and inadequate training.

121.    Chief Stahr ridiculed Association members for emphasizing the Department's inconsistent disciplinary standards and remarked, "You wanted discipline, well you got it." Chief Stahr said he would initiate strict enforcement of all Department policies.

122.    Stahr said supervisors who failed to discipline employees for policy violations would be disciplined themselves.

123.    Stahr instituted mandatory shift changes, suspended Special Weapons and Tactics (SWAT) operations and grant funding, threatened to revoke take-home vehicles, threatened to halt the accrual of compensatory time, and said employees should expect additional restrictions in the near future.

124.    Stahr established a new policy requiring employees to fill out a form in order to file a complaint against a supervisor, which eliminated employees' ability to discuss any issues with the City Manager and City Commissioners.

125.    On January 10, 2019, Defendant Stahr ordered all peace officers to record the odometer

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 18**

LEONARDAMENDEDCOMPLAINT1.wpd

readings of their assigned vehicles at the beginning and end of tours of duty.

126.    Stahr and Lieutenant Lahoma Vaughn were exempt from this order, which was official Department policy effective January 15, 2019.

127.    On January 11, 2019, Defendant Stahr ordered all peace officers to restrict meals and breaks to only one peace officer at any given time, while Chief Stahr and Lieutenant Lahoma Vaughn were also exempt from this order.

128.    This order prevented free association and discoured social interaction among Association members and was instituted as official Department policy effective January 15, 2019.

129.    Around January 11, 2019, Defendant Stahr ordered all peace officers to limit the accumulation of compensatory time to 24 hours, and this was made official Department policy effective January 15, 2019.

130.    On January 16, 2019, Defendant Stahr summoned Plaintiff to his office, where Stahr's friend Jake Weaver was present in Stahr's office at the Police Department to interview Leonard.

131.    Defendants do not claim this interview was part of any investigation under TEXAS GOVERNMENT CODE § 614.023.

132.    On March 18, 2019, Plaintiff was told by Michael Guevara, who was acting as agent or representative of Defendant City, that Plaintiff would be investigated by the Wichita County Sheriff's Office under TEXAS GOVERNMENT CODE § 614.023, unless Plaintiff resigned.

133.    This proposal by Guevara, on behalf of Defendant City, was extortion and exemplifies the intentional conduct by Defendants to deprive Plaintiff of his civil rights.

134.    Guevara told Plaintiff and his attorney, Lance Wyatt, the following:

    **"If there is some type of separation, because we don't know what's going to**

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 19**

LEONARDAMENDEDCOMPLAINT1.wpd

**happen, you know there is an F-5, that obviously gives us three criteria, you know, you've got honorable, dishonorable, general. Uh, once the investigations, you know, started, you are really stuck with general or lower, after that because there is a pending investigation, unless there's some kind of settlement agreement or something like that, that goes along that line that's you know, we could be talking, who knows how long it will last, but we could be talking a year plus over all that. Uh, so that, that's where the City is at right now is that, uh, because it is pending, and because of the high profile nature of what this is, that would, um, you know without some type of resolution here today, then we would start the 614 process, and you know, you would go forward with the complaint, uh, go ahead and get you to sign the Garrity acknowledgment, so that we would have that in the file, and then, uh, contact the Sheriffs department and get that started."**

135.    When questioned by Lance Wyatt whether a voluntary resignation was being offered to Plaintiff by Defendants in lieu of an investigation, Guevara agreed that the extortionate offer was being proposed by Defendants in exchange for Plaintiff's resignation.

136.    From Guevara's express statements, it is clear that any purported investigation of alleged complaints against Zac Leonard would not be a fair, objective, impartial investigation, as required by TEXAS GOVERNMENT CODE § 614.023.

137.    Guevara said once the investigation started, "you are really stuck with general or lower, after that because there is a pending investigation, unless there's some kind of settlement agreement or something like that", making clear that Leonard could not be exonerated by the supposed investigation, nor could Leonard receive an Honorably Discharged F-5.

138.    Defendant Cutrone was listed as the complainant and he signed the Notice of Complaint on March 18, 2019.

139.    Defendant Stahr issued a Memorandum titled "Notice of Unpaid Administrative Leave and Confidentiality Order" on March 18, 2019.

140.    In the Notice, Defendant Stahr states "An investigation will be conducted. You will be

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 20**

interviewed." But Defendants failed to do these things as required by Defendant City's policies.

141. Plaintiff was not contacted, nor interviewed, during any supposed investigation.

142. Later, when Zac Leonard challenged the General Discharge F-5 by appealing to the State Office of Administrative Hearings ("S.O.A.H.), Defendant Cutrone testified at the S.O.A.H. hearing about the supposed investigation.

143. Cutrone testified he was the decision-maker who fired Leonard, but he admitted he conducted no investigation, he completed no interviews, and he reviewed no evidence.

144. Cutrone instead testified his decision to fire Leonard was based on the events at the alumni soccer game supposedly being "the talk of the town.".

145. Cutrone falsely claimed that he referred the complaint against Plaintiff to the Wichita County Sheriff's Office for investigation, but the Sheriff's Office did not investigate the complaint.

146. In an undated letter, Wichita County Deputy Sheriff Eric Wisch said the Wichita County Sheriff's Office completed a "review", but no investigation.

147. Deputy Wisch admitted he "did not interview [Zac] Leonard or any other involved parties or witnesses as he was tasked with the review and interpretation of applicable policy".

148. Although Wisch produced his letter in 2019 before Leonard was fired, Defendant City never produced the Wisch letter to Plaintiff until January 7, 2021 in Plaintiff's appeal of his TCOLE F-5.

149. While Defendants argue Deputy Wisch's letter was not dated, or authenticated, and it is hearsay, Defendants still claim they relied on the Wisch letter to wrongfully terminate Plaintiff.

150. At Plaintiff's F-5 appeal, Defendant Tillman, who Leonard had not met before, testified that he did not review documents, statements, or evidence before issuing Leonard a General Discharge.

151. No actual or impartial investigation of any complaint against Plaintiff occurred, which

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 21**

Leonard alleges is a violation of TEXAS GOVERNMENT CODE § 614.023.

152.    Deputy Sheriff Wisch merely reviewed policies, but he conducted no investigation.

153.    Defendant Cutrone has admitted both that he did not conduct any investigation required by

TEXAS GOVERNMENT CODE § 614.023 and that he did conduct the investigation required by

Burkburnett Police Department policy.

154.    That the Complainant, Cutrone, was allowed to be the investigator of his own complaint

against Plaintiff, also amounts to a denial of due process and a violation of TEXAS GOVERNMENT

CODE § 614.023, which Leonard alleges requires that the investigation be fair, objective, impartial.

155.    Tillman later testified that he gave Leonard a General Discharge F-5 because Defendant

Cutrone and Defendant Guevara told him to designate Leonard's F-5 as a General Discharge.

156.    Plaintiff alleges Defendant Guevara's continued improper handling of Leonard's F-5 appeal

was part of his effort to punish Leonard for his speech and for his political activities.

157.    Plaintiff also alleges that Defendant Guevara sought gain improper advantage for Defendant

City and the individual Defendants in this lawsuit by his improper handling of Leonard's F-5 appeal,

as noted in an email that a City Commissioner sent to Defendant Guevara.

158.    In March and April of 2019, Defendant City's code enforcement personnel harassed and cited

property owners who displayed signs on their property that supported civil service.

159.    Defendant City's code enforcement personnel did not harass or cite property owners,

including Commissioner Bill Lindeborn, who displayed signs that opposed civil service.

160.    After Defendant City's effort to harass property owners supporting civil service was

identified on social media, Defendant Cutrone claimed Defendant City controlled the first 5 ¾ feet

of private property adjacent to a roadway.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 22**

161.    KFDX-TV posted a news story about this on April 11, 2019 featuring a copy of a warning notice from Code Enforcement and an interview with Cutrone.

162.    With the concerted effort by Defendant City's code enforcement employees to harass and cite property owners, Plaintiff submitted an Open Records Request on April 4, 2019 to obtain a copy of Defendant City's ordinance that was allegedly being violated.

163.    Defendant City later admitted there was no ordinance to regulate signs supporting civil service on private property.

164.    On April 25, 2019, Plaintiff was fired by Cutrone, allegedly due to the soccer game collision.

165.    Defendant Tillman has testified as the representative of Defendant City and has admitted that Defendant Stahr and Defendant Cutrone participated in the termination of Plaintiff.

166.    Plaintiff alleges that Defendant Cutrone was delegated the authority to hire and fire by Defendant City and that Cutrone was a final policy-maker for purposes of Leonard's termination that was in retaliation for Leonard's speech and political activities.

167.    Defendant Cutrone admits that he made the decision to fire Leonard at the direction or suggestion of Defendant Guevara.

168.    Plaintiff alleges that Defendant Cutrone and Defendant Guevara knew that Leonard's termination in retaliation for Leonard's speech and political activities was illegal.

169.    Plaintiff alleges that Defendant Cutrone and Defendant Guevara briefed the City Commissioners on Leonard's termination and that all of the City Commissioners also knew the termination in retaliation for Leonard's speech and political activities was illegal.

170.    Defendant Cutrone notified Plaintiff of the termination on April 25, 2019, by stating Plaintiff's "employment with the City is terminated, effective today."

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 23**

LEONARDAMENDEDCOMPLAINT1.wpd

171.    Plaintiff appealed his termination to Defendant Cutrone on April 30, 2019.

172.    Defendant Cutrone issued a written decision on Plaintiff's appeal to Plaintiff's prior counsel on May 24, 2019, but Cutrone did not uphold nor overturn Plaintiff's appeal.

173.    In correspondence with Plaintiff's prior attorney, Defendant Cutrone stated "your client's appeal of his termination is denied."

174.    On May 23, 2019, a day before Defendant Cutrone's decision to deny Plaintiff's appeal was issued, Defendant Tillman issued a Separation of Licensee Report (F-5) for Plaintiff.

175.    Defendant Tillman sent the F-5 to TCOLE.

176.    Defendant Tillman stated the date of separation from employment as May 23, 2019.

177.    By stating this erroneous date, and not the actual date of April 25, 2019, on Plaintiff's F-5, Defendant Tillman knowingly made a false entry in a government record.

178.    Defendant Tillman's entry of false information in the F-5 was relied upon by TCOLE as the wrong date of termination is now listed in TCOLE's Data Distribution System (TCLEDDS).

179.    Plaintiff's date of termination from employment with Defendant City was actually April 25, 2019 as stated in Defendant Cutrone's termination letter.

180.    Tillman also provided false information by claiming a copy of the F-5 Report was sent to Plaintiff by certified mail on May 23, 2019 and when he attested "that this is a true and accurate explanation of the circumstances under which this person resigned or was terminated."

181.    The F-5 was not actually sent to Plaintiff until May 24, 2019, when it was sent by City Director of Administration, Trish Holley, via Federal Express.

182.    Plaintiff alleges that over the course of time from late Summer 2018 through the time of his termination in April 2019, that Defendant Cutrone and Defendant Guevara briefed the City

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 24**

LEONARDAMENDEDCOMPLAINT1.wpd

Commissioners and terminated his employment with the approval of and the knowledge by the City Commissioners that the termination was retaliatory.

183.    Defendants failed to follow City policies, including Police Department Operating Instruction #118, dated December 1, 2013.

184.    Section III, Reception of Complaints, subsection B.1. of Operating Instruction #118, states "complaints must be in writing, signed, and sworn to by the person making the complaint. If possible, complaints should be in affidavit form, or on appropriate forms provided by the Department.".

185.    Section III, Subsection D, states "As soon as practicable after the receipt of a complaint, the officer who is the subject of the complaint will be notified in writing that a complaint has been lodged against him/her, to include the name of the complainant, the nature of the allegations, and the employee's rights and responsibilities relative to the investigation."

186.    Section V, Subsection B, of the policy states "The complainant will be requested to put their complaint in writing and will be required to swear to the verity of the complaint. In some cases, the complaint will be taped and transcribed, but the complainant must swear to the verity of the complaint. All complaints must be signed. Refusal to sign a complaint will inactivate the complaint, unless further investigation is ordered by the Chief of Police."

187.    Defendants failed to comply with several requirements of City policies.

188.    Plaintiff was denied his due course of law right to provide statements and/or evidence to defend himself, as specifically allowed by Defendant City's policy.

189.    Plaintiff's wrongful termination violated TEXAS GOVERNMENT CODE § 614.023, as disciplinary action was imposed by Defendants without first providing Plaintiff a copy of a signed complaint, without investigating the complaint, and without complying with Section 614.023.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 25**

190.    Plaintiff alleges Defendants deprived him of various other due course of law protections, including some protections provided by Defendant City's own policies.

191.    Plaintiff alleges his termination violated TEXAS GOVERNMENT CODE § 614.023, because the alleged investigation of Plaintiff failed to prove any misconduct by Plaintiff.

192.    Plaintiff alleges his wrongful termination violated TEXAS GOVERNMENT CODE § 614.023, because Defendant City never had any evidence of misconduct by Plaintiff.

193.    Plaintiff filed an appeal of his termination, but was denied a hearing on this appeal.

194.    TEXAS GOVERNMENT CODE § 617.005 gives public employees in Texas a statutory right "'individually' to present grievances"[6], including "to present grievances concerning their wages, hours of employment, or conditions of work either individually or through a representative[7].

195.    TEXAS GOVERNMENT CODE § 617.005 requires that public employees have "access to those in a position of authority in order to air their grievances".[8]

196.    Defendant Cutrone's refusal to hear Plaintiff's grievance violated Texas law.[9]

197.    In a letter on May 3, 2019, City Attorney Guevara said "the City does not have a formal appeal process in place."

198.    Resolution Number 643, passed on June 18, 2018 by the Board of Commissioners, approves

---

[6]*Sayre v. Mullins*, 681 S.W.2d 25, 28 (Tex. 1984) (construing TEX. REV. CIV. STAT. art. 5154c, as predecessor statute to TEX. GOV'T CODE § 617.  See Act of April 17, 1947, 50th Leg., R.S., ch. 135, 1947 Tex. Gen. Laws 231, 231-32, *repealed and reenacted by* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 46, 1993 Tex. Gen. Laws 583, 686, 986 (codified at TEX. GOV'T CODE ch. 617)).

[7]*City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 135 (Tex. 2013).

[8]*Mullinax v. Texarkana Indep. Sch. Dist.*, 2001 WL 422731 at *3 (5th Cir. April 2, 2001) (citing *Corpus Christi Independent School District v. Padilla*,709 S.W.2d 700, 707 (Tex.App. Corpus Christi 1986, no writ)).

[9]*Id.*

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 26**

and adopts the Personnel Policy Handbook as official policy of the City.

199.    The Personnel Policy Handbook states "[t]he formal appeal procedure is available to any regular classified employee who disagrees with the decision to terminate the employee."

200.    Plaintiff seeks a hearing on his grievance under policy adopted by City Ordinance.

201.    Plaintiff also seeks a hearing on his grievance before someone "in a position of authority in order to air [his] grievances" as allowed by TEXAS GOVERNMENT CODE § 617.005.

202.    Plaintiff spoke at a Board of Commissioners meeting in February 2021 after he was fired, but the Board of Commissioners was not "in a position of authority in order to air [his] grievances" as the Texas Opens Meeting Act prohibits acting on any matter that is not an agenda item.

203.    Plaintiff's grievance was not an agenda item for the Board of Commissioners on February 22, 2021 when he appeared before the Burkburnett Board of Commissioners.

204.    Plaintiff does not complain about any discretionary decision on how grievances are heard, nor about any discretionary decision on who has authority to hear his grievance.

205.    Plaintiff suffered economic damages and seeks to recover economic damages, including his lost wages and expenses incurred seeking to mitigate the harms inflicted by Defendants.

206.    On May 23, 2019, Defendant City submitted to TCOLE, a fraudulent government document, as the TCOLE Form F-5 that Defendant issued to Plaintiff with a "General Discharge" stated on the Form F-5, when Plaintiff was wrongfully terminated by Defendants.

207.    Defendant Guevara, Burkburnett City Attorney, and other Defendants have continued their retaliation against Plaintiff by opposing his TCOLE F-5 appeal.

208.    Defendants' overt acts are intended to violate Plaintiff's civil rights.

209.    On December 15, 2020, Plaintiff requested by letter to Mayor Carl Law that the Burkburnett

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 27**

LEONARDAMENDEDCOMPLAINT1.wpd

City Council hear his petition for reinstatement at its next scheduled meeting.

210.    On January 11, 2021, Plaintiff again requested in writing that the Burkburnett Board of Commissioners, as final policy maker for Defendant City, hear his wrongful termination appeal.

211.    Defendant City refused to place Plaintiff's appeal of his wrongful termination on the agenda for any meeting of Defendant City's Board of Commissioners.

212.    On February 22, 2021, Plaintiff appeared before Defendant's Board of Commissioners asking that his appeal of his wrongful termination be heard by the Board of Commissioners.

213.    On February 22, 2021, Plaintiff and his counsel appeared before Defendant's Board of Commissioners to explain that Leonard's wrongful termination in retaliation for his speech and political activities was illegal and violated Leonard's civil rights.

214.    Plaintiff's in-person request to the Board of Commissioners, along with his earlier written and verbal requests to Defendant Lawrence Cutrone, Defendant Michael Guevara, Margie Poole, Carl Law, John Beard, Ted Kwas, were all requests for a "Name Clearing Hearing".

215.    Plaintiff's appearance on February 15, 2021 before the Board of Commissioners was not "access to those in a position of authority" as required by TEXAS GOVERNMENT CODE § 617.005.

216.    On February 15, 2021, the Board of Commissioners was barred from acting to remedy Plaintiff's appeal of his wrongful termination by TEXAS GOVERNMENT CODE § 551.042.

217.    Although the Plaintiff alleges that the Board of Commissioners' failure to  was barred from acting to remedy  Defendant Cutrone and Defendant Guevara briefed the City Commissioners on Leonard's termination and that all of the City Commissioners also knew the termination in retaliation for Leonard's speech and political activities was illegal.

218.    Defendant City continues to refuse to place Plaintiff's appeal of his wrongful termination on

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 28**

the agenda for a meeting of the Board of Commissioners.

219.    As of the filing of this amended petition, Defendants continue to deny Plaintiff's due course of law and continue to resist any efforts to correct their illegal conduct.

220.    Defendants' claim Defendant Guevara is "absolutely immune" because he served as City Attorney and rendered professional legal services as a lawyer is frivolous.

221.    Defendants also claim Guevara's clear wrongdoing is not actionable because he was discharging duties as a lawyer representing his client.

222.    Even if Defendant Guevara has immunity for privileged statements in court or in pleadings, his illegal actions violate TEXAS PENAL CODE § 1.07(a)(41)(D) and are not privileged.

223.    When Defendant Guevara engaged in his efforts of coercion directed at Plaintiff, he violated TEXAS PENAL CODE § 1.07(a)(9)(F)) and violated several Texas statutes.

224.    Defendant Guevara has no immunity when he is engaged in an ongoing effort, as a co-conspirator with other Defendants, to violate Plaintiff's rights.

225.    Defendant Guevara's illegal conduct includes against an elected official, Burkurnett City Commissioner Cory Brinkley, who tried to stop Defendants' retaliation against Plaintiff.

226.    On February 15, 2022, at Defendant City's Board of Commissioners voted 6-1 to censure Commissioner Brinkley due to his efforts to stop the retaliation against Plaintiff.

227.    Also on February 15, 2022, Defendant Guevara openly chastised Commissioner Brinkley for aiding Plaintiff's effort to end Defendants' retaliation against Plaintiff.

## VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

228.    Plaintiff re-alleges and incorporates by reference all of the allegations in paragraph 18 to paragraph 227 above, and in paragraph 237 to paragraph 265 below, in their entirety, as the factual

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 29**

support for this claim.

229.    Defendants, under color of law, statute, ordinance, regulation, custom, or usage, caused Plaintiff, a citizen of the United States, a deprivation of rights, privileges and immunities secured by the United States Constitution and laws of the United States and of the State of Texas.

230.    Plaintiff shows Defendants shall properly be held liable for the injuries they caused Plaintiff in this action at law and in equity, which Plaintiff pursues for redress and for all of the economic damages he has suffered due to Defendants' violations of law.

231.    Plaintiff also seeks necessary injunctive relief, mandamus relief, and/or declaratory relief as allowed by 42 U.S.C. § 1983.

### DENIAL OF RIGHTS WITHOUT DUE COURSE OF LAW

232.    Plaintiff re-alleges and incorporates by reference all of the allegations in paragraph 18 to paragraph 227 above in their entirety, as the factual support for this claim.

233.    Plaintiff's constitutionally protected civil rights to speak on matters of public concern and to freely associate with others who share his political views have been damaged by Defendants.

234.    Defendants damaged and/or deprived Plaintiff of constitutional rights without due course of law, as Defendants' punishment and retaliation for speech and/or political activities was accomplished without notice, nor any opportunity for Plaintiff to appeal, in violation of Texas law.

235.    Plaintiff seeks injunctive relief, declaratory relief and/or mandamus relief including but not limited to rescission of all punishment and retaliation for his speech and political activities, including his wrongful termination by Defendants, which illegal actions have damaged and/or deprived Plaintiff of his constitutionally protected civil rights without due course of law.

236.    More specifically, Plaintiff seeks to enjoin the still continuing, illegal course of conduct by

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 30**

Defendants and others who engaged in retaliatory actions against Plaintiff for exercising his free speech rights guaranteed by the Texas Constitution and by the U.S. Constitution, including the retaliatory transfers of Plaintiff's job duties; the wrongful termination of Plaintiff; the illegal filing of a fraudulent government document with TCOLE, the "general discharge" TCOLE F-5 issued to Plaintiff; and the objection by Defendants to Plaintiff's appeal of the fraudulent TCOLE.

237.    Plaintiff Leonard was a public employee all of the time he was a Burkburnett police officer.

238.    Plaintiff Leonard was discharged by the Notice of Termination issued by Defendant City that was dated April 25, 2019.

239.    Each Defendant falsely accused Plaintiff of engaging in misconduct and violating City policies, which Defendants also claimed falsely were reasons for Leonard's wrongful termination.

240.    All of the alleged misconduct and all alleged policy violations that Defendants claim as the reasons for Plaintiff Leonard's termination were clearly false, as noted by the following:

   a.    Polygraph Report, March 5, 2019;

   b.    Burkburnett Informer Star article, March 4, 2021;

   c.    Texomashomepage.com article, May 18, 2021;

   d.    Bigcountryhomepage.com article, June 1, 2021; and

   e.    Burkburnett Informer Star article, March 3, 2022.

241.    The false allegations of misconduct and false allegations of policy violations were made public, including by the following publications:

   a.    Texomashomepage.com article, March 13, 2019;

   b.    Bigcountryhomepage.com article, date unknown;

   c.    Burkburnett Informer Star article, March 21, 2019;

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 31**

LEONARDAMENDEDCOMPLAINT1.wpd

d.      Notice of Complaint, March 18, 2019;

e.      Notice of Termination, April 25, 2019;

f.      Burkburnett Informer Star article, March 4, 2021; and

g.      Burkburnett Informer Star article, March 3, 2022.

242.    Plaintiff repeatedly requested a name-clearing hearing, including by the following requests:

a.      Letter from Lance Wyatt to Lawrence Cutrone, April 30, 2019;

b.      Letter from Lance Wyatt to Michael Guevara and Lawrence Cutrone, May 13, 2019;

c.      E-Mail from William Dunleavy to Margie Poole, January 11, 2021;

d.      Letter from William Dunleavy to Carl Law, January 11, 2021;

e.      Letter from William Dunleavy to Michael Guevara, January 14, 2021;

f.      Letter to John Beard, February 8, 2021;

g.      Letter to Ted Kwas, February 8, 2021;

h.      Board of Commissioners meeting, February 22, 2021 (audio recording)

i.      Letter from William Dunleavy to Michael Guevara, February 23rd, 2021

j.      Plaintiff Leonard's Response to Defendants' First Amended Plea to the Jurisdiction, Page 27, "PLAINTIFF REQUESTS A NAME CLEARING HEARING".

243.    Despite these repeated requests for a name-clearing hearing, Plaintiff Leonard was never

allowed the requested hearing, which denials of the hearing included:

a.      Decision on Appeal of Zachary Leonard, May 24, 2019;

b.      Letter from Michael Guevara to William Dunleavy, January 14, 2021; and

c.      Letter from Michael Guevara to William Dunleavy, January 22, 2021.

244.    Plaintiff Leonard shows the false public accusations and allegations of immoral conduct

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 32**

LEONARDAMENDEDCOMPLAINT1.wpd

Defendants made against him, including the designation on his TCOLE F-5 of "General Discharge", were so stigmatizing they create a "badge of infamy" that destroyed Plaintiff Leonard's ability to take advantage of other employment opportunities and lowered his standing in the eyes of the community.

245.    Plaintiff Leonard has not been able to obtain subsequent employment as a police officer due to the stigmatizing effect of Defendants' false accusations and false allegations.

246.    Plaintiff is not currently employed as a police officer and he has been unable to obtain employment as a police officer since his wrongful termination by Defendants.

247.    Plaintiff has considered employment at various police departments since his termination, but the false accusations and false allegations bar his employment at numerous police departments, including the following employment opportunities that Plaintiff considered:

    a.    Wichita Falls Police Department, which agency website states this Disqualifier: "Applicant has been dismissed or resigned in lieu or dismissal from any employment for inefficiency, delinquency or misconduct."

    b.    Dallas Police Department, which agency website listed the following Disqualifying Factor: "Applicants must not have been dismissed or resigned in lieu of dismissal from employment for inefficiency or misconduct."

    c.    Irving Police Department, which agency website listed the following Disqualifier: "Must not have been dismissed from public service for inefficiency, delinquency, or misconduct."

    d.    Plano Police Department, which agency website listed the following Cause for Disqualification: "Has been dismissed or resigned in lieu of dismissal from any employment for inefficiency, delinquency, or misconduct."

248.    Plaintiff considered employment at other police departments that also had similar prohibitions on employment of officers with terminations due to alleged misconduct.

249.    Plaintiff was deprived of his rights without due course of law or due process, as Defendants' refused to allow Plaintiff any hearing before persons with authority to rescind his wrongful

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 33**

termination, including the denial of a hearing before Defendant Cutrone and the denial of a hearing before Defendant's City Council in violation of Texas law and federal law.

250.    Plaintiff was also deprived of his rights without due course of law, as Defendants' failed to provide Plaintiff the written complaint, investigation, and facts to support the allegations against him before he was wrongfully terminated in violation of Texas law and federal law.

251.    Plaintiff was also deprived of a public name-clearing hearing that would address the harm suffered when members of the public saw or heard stories falsely accusing Plaintiff.

252.    The false reporting stigmatizes Plaintiff, who was false accused of misconduct as a police officer, the false reports did damage Plaintiff's personal reputation, they damaged his professional reputation as a police officer, and they lowered Plaintiff's standing in the eyes of the community.

253.    The stigmatizing false reports that Plaintiff engaged in misconduct as a police did prevent Plaintiff from obtaining employment as a police officer after he was terminated by Defendants.

254.    For Texas peace officers whose employment was terminated at the time Plaintiff was terminated, their employing law-enforcement agency must submit a report to the Texas Commission on Law Enforcement that includes a statement about whether the licensee was honorably discharged, generally discharged, or dishonorably discharged and [] provide an explanation of the circumstances under which the person was terminated.

255.    Plaintiff Leonard was improperly denied an "honorably discharged" F-5 and he was stigmatized by the "General Discharge" designation, because Texas law-enforcement agencies cannot hire a licensed peace officer before "making a request to the commission for any employment termination report regarding the person" or "obtain[ing] from the commission any service ... records regarding the person maintained by the commission."

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 34**

LEONARDAMENDEDCOMPLAINT1.wpd

256.    Plaintiff Leonard was stigmatized and denied opportunities for employment at other Texas law-enforcement agencies due to Defendants' conduct."

257.    Plaintiff Leonard alleges that Defendant Cutrone, Defendant Tillman, and Defendant Guevara were final policy-makers and had authority delegated to this from the Board of Commissioners to take their illegal actions described above against Plaintiff, which delegation of occurred at the regular meetings of the Board of Commissioners during the time of the events recited above.

258.    Plaintiff Leonard alleges that Defendant Cutrone, Defendant Tillman, and Defendant Guevara directed by the Board of Commissioners, who were final policy-makers, and they took their illegal actions against Plaintiff at the direction of the final policy-makers.

259.    Plaintiff Leonard alleges that Defendant Cutrone, Defendant Guevara, Defendant Tillman, and Defendant Stahr notified the Board of Commissioners of their illegal actions against Plaintiff, that the Board of Commissioners was well aware of the illegal actions, and that the Board of Commissioners ratified and approved the individual Defendants' illegal actions as the final policy-makers for Defendant City.

260.    Plaintiff Leonard alleges that he has a liberty interest in not being harassed, punished, or otherwise subjected to retaliation by Defendants for his speech that Defendants disagree with or for his political activities advocating for civil service for Burkburnett police officers.

261.    Plaintiff Leonard alleges that he has a property interest in his continued good reputation and a liberty interest in not having his reputation damaged, in any way, in retaliation for his speech and political activities.

262.    Plaintiff Leonard alleges he was denied procedural protections he is guaranteed under state law, TEXAS GOVERNMENT CODE § 614.023, including that he not be suspended without pay, nor

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 35**

terminated, without the accomplishment of the procedural requirements of this law.

263.    Plaintiff Leonard alleges that his suspension without pay, and his termination, without the accomplishment of the procedural requirements of  TEXAS GOVERNMENT CODE § 614.023 and in retaliation for his speech and political activities is by definition arbitrary, capricious, and in violation of his First Amendment and other constitutional rights.

264.    Plaintiff Leonard alleges that his suspension without pay and his termination are adverse employment actions.

265.    Plaintiff Leonard alleges that the deprivations, infringements, and losses of his "First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v Burns*, 427 U.S. 347, 373 (1976).

## EQUAL PROTECTION UNDER LAW

266.    Plaintiff re-alleges and incorporates by reference all of the factual allegations in paragraph 18 to paragraph 227, and in paragraph 237 to paragraph 265 above in their entirety, as the factual support for this claim.

267.    The actions of Defendants to deprive Plaintiff of his equal rights guaranteed by the Texas Constitution, Art. I, § 3 and under the U.S. Constitution, when others similarly situated were not also deprived of their rights to speak and/or engage in political activities.

268.    Plaintiff seeks injunctive relief, declaratory relief and/or mandamus relief, including but not limited to rescission of all punishment and retaliation for his speech and political activities, including his wrongful termination by Defendants.

269.    Injunctive relief, declaratory relief and/or mandamus relief, should effect a cessation of the continuing, illegal course of conduct by Defendants and others whose retaliation against Plaintiff for

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 36**

demanding equal protection under law as guaranteed by the Texas Constitution and by the U.S. Constitution, including retaliatory transfers; the wrongful termination of Plaintiff; the illegal filing of a fraudulent government document with "TCOLE", the "general discharge" TCOLE F-5 issued to Plaintiff; and the objection by Defendants to Plaintiff's appeal of the fraudulent TCOLE.

### DENIAL OF RIGHT TO FREE SPEECH

270.    Plaintiff re-alleges and incorporates by reference all of the allegations in paragraph 18 to paragraph 227, and in paragraph 237 to paragraph 265 above in their entirety, as the factual support for this claim.

271.    Defendants denied and/or deprived Plaintiff of his right to "speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege", guaranteed by Texas Constitution, Art. I, § 8 and his right to speech guaranteed by the First Amendment to the U.S. Constitution.

272.    Plaintiff shows the punishment and retaliation for his speech and political activities, including his wrongful termination by Defendants, which was ratified by the governing body of Defendant City, is the functional equivalent of a law that curtails Plaintiff's freedom of speech in violation of Texas Constitution, Art. I, § 8 and the First Amendment.

273.    Free speech is a fundamental right.  Plaintiff's speech was on a matter of significant public concern: an election over civil service protection for police employees of Defendant City.

274.    Plaintiff was employed by Defendant City, but his speech was not employee speech, it was speech as a citizen on a matter of public concern, and Defendants may not restrict, nor limit his speech, nor do Defendants have any legal authority to retaliate against Plaintiff for his speech.

275.    Plaintiff's termination from employment, the fraudulent F-5 he was issued, and other actions by Defendants identified in the factual allegations above were adverse employment actions.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 37**

LEONARDAMENDEDCOMPLAINT1.wpd

276.    Plaintiff's speech involved matters of public concern, including an upcoming civil service election, Plaintiff's efforts campaigning. and misconduct by officials at the City of Burkburnett.

277.    Plaintiff's interest in commenting on matters of public concern outweighed Defendant City's purported interest in promoting workplace efficiency.

278.    Plaintiff's speech was a substantial or motivating factor in the defendants' adverse actions.

279.    Plaintiff seeks injunctive, declaratory, and/or mandamus relief including rescission of all punishment and retaliation by Defendants for his speech and political activities.

280.    Such relief should effect a cessation of Defendants' continuing, illegal course of conduct in retaliation for Plaintiff exercising his free speech rights under the Texas Constitution and the U.S. Constitution, including retaliatory transfers of his duties; his retaliatory and wrongful termination; the illegal filing of a fraudulent document with TCOLE, the "general discharge" TCOLE F-5 issued to Plaintiff; and the objection by Defendants to Plaintiff's appeal of the fraudulent TCOLE.

## DENIAL OF RIGHT TO FREELY ASSOCIATE AND ASSEMBLE

281.    Plaintiff re-alleges and incorporates by reference all of the allegations in paragraph 18 to paragraph 227, and in paragraph 237 to paragraph 265 above in their entirety, as the factual support for this claim.

282.    Defendants deprived Plaintiff of his right to "in a peaceable manner ... assemble together for their common good", guaranteed by the Texas Constitution, Art. I, § 27 and the First Amendment.

283.    Retaliation for Plaintiff's speech and political activities, including his wrongful termination, was ratified by the City's governing body and infringes upon Plaintiff's right to freely associate and/or freely assemble in violation of Texas Constitution, Art. I, § 27 and the First Amendment.

284.    Plaintiff seeks injunctive relief, declaratory relief and/or mandamus relief, including

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 38**

rescission of all punishment and retaliation for exercising his rights to freely assemble and associate with others, and for his political activities, including his retaliatory termination by Defendants.

285.    Plaintiff seeks the cessation of a still continuing, illegal course of conduct by Defendants and others who have retaliated against Plaintiff for demanding his rights to freely assemble and free associate with others as guaranteed by the Texas Constitution and the U.S. Constitution.

286.    Defendants' retaliation included transfers of Plaintiff; wrongful termination; filing of a fraudulent government document with "TCOLE", the "general discharge" TCOLE F-5 issued to Plaintiff; and Defendants' objection to Plaintiff's appeal of the fraudulent TCOLE F-5.

## WRONGFUL TERMINATION

287.    Plaintiff re-alleges and incorporates by reference all of the allegations in paragraph 18 to paragraph 227, and in paragraph 237 to paragraph 265 above in their entirety, as the factual support for this claim.

288.    Plaintiff was fired by Defendants in retaliation for exercising his free speech right and/or his right to freely associate and engage in political activity, which termination was clearly illegal.

289.    Plaintiff alleges his termination violates the long settled rule of law central to this case: ***that the government may not punish citizens for their speech or expressive conduct simply because the government disapproves of the ideas expressed***.[10]

290.    Plaintiff seeks injunctive relief, mandamus relief, reinstatement of employment, expungement of all negative information in personnel files of Defendant City.

291.    Plaintiff also seeks reinstatement of all benefits and seniority rights that he lost because of

---

[10]*R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 309-311 (1940); and *Texas v. Johnson,* 491 U.S. 397, 406 (1989)).

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 39**

LEONARDAMENDEDCOMPLAINT1.wpd

his illegal termination.

## DENIAL OF RIGHT TO PETITION

292.    Plaintiff re-alleges and incorporates by reference all of the allegations in paragraph 18 to paragraph 227, and in paragraph 237 to paragraph 265 above in their entirety, as the factual support for this claim.

293.    Defendants denied, deprived, or infringed upon Plaintiff's right to petition "those invested with the powers of government for redress of grievances or other purposes" as guaranteed by the Texas Constitution, Art. I, § 27 and by the First Amendment to the U.S. Constitution.

294.    Plaintiff alleges "the right to petition the government for redress is a fundamental part of the republican form of government with its roots extending back to the Magna Charta."[11]

295.    Plaintiff seeks "access to those in a position of authority in order to air [his] grievances".[12]

296.    Defendants denied Plaintiff the opportunity to grieve his wrongful termination by refusing to allow his grievance to be heard by a person with the authority to remedy the grievance, which Plaintiff alleges is a denial of his right to petition.

297.    Plaintiff appealed his wrongful termination to Defendant Cutrone, but Defendant Cutrone denied the grievance without a hearing.

298.    Plaintiff also sought to have his grievance heard by Defendant City at a City Council meeting, but Defendant City refused to place the grievance on the agenda for the meeting.

---

[11]*Corpus Christi Independent School District v. Padilla*, 709 S.W.2d 700, 705 (Tex.App.- Corpus Christi 1986, no writ).

[12]*Mullinax v. Texarkana Indep. Sch. Dist.*, 2001 WL 422731 at *3 (5th Cir. April 2, 2001) (citing *Corpus Christi Independent School District v. Padilla*,709 S.W.2d 700, 707 (Tex.App. Corpus Christi 1986, no writ)).

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 40**

299.    At the City Council meeting on February 15, 2021, Plaintiff stated his wrongful termination grievance, but the City Council could not consider the matter that was not on the agenda.

300.    Defendant's City Council has continued to refuse to place Plaintiff's grievance on the agenda for any City Council meeting, despite Plaintiff's requests.

301.    Plaintiff seeks injunctive relief, declaratory relief and/or mandamus relief, including an order requiring that his grievance be heard by Defendant City as an agenda item for Defendant City's City Council, as vindication of Plaintiff's fundamental right to petition.

302.    Defendants' actions of refusing to hear Plaintiff's grievance serves to deprive Plaintiff of his right to petition guaranteed by the Texas Constitution, Art. I, § 27 and by the First Amendment to the U.S. Constitution, for which deprivation of rights he now sues and requests that the Court enjoin.

303.    Plaintiff seeks injunctive relief, declaratory relief and/or mandamus relief, including but not limited to cessation of all punishment and retaliation for Plaintiff's speech and political activities and an order requiring the vindication of Plaintiff's petition rights.

304.    Such injunctive relief, declaratory relief and/or mandamus relief, should effect a cessation of the continuing, illegal course of conduct by Defendants and others whose retaliatory actions against Plaintiff for demanding his right to petition, including the continuing objection by Defendants to Plaintiff's appeal of the fraudulent TCOLE F-5 issued by Defendants.

305.    Plaintiff also shows the City of Burkburnett Board of Commissioners ratified the Personnel Policy Handbook under Resolution Number 643.

306.    Defendant City promised "any regular classified employee who disagrees with the decision to terminate the employee" a "formal appeal procedure."

307.    A "formal appeal procedure" is due process Defendant City guaranteed to its employees.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 41**

LEONARDAMENDEDCOMPLAINT1.wpd

308.    Plaintiff requested a formal appeal, Defendant Cutrone refused it, Defendant Guevara denied the City had a "formal appeal procedure" and these Defendants denied Plaintiff due process.

309.    Plaintiff asks the Court to require Defendants to provide him the "formal appeal procedure" allowed by City ordinance or policy.

## VIOLATION OF TEXAS GOVERNMENT CODE § 617.005

310.    Plaintiff re-alleges and incorporates by reference all of the allegations in paragraph 18 to paragraph 227, and in paragraph 237 to paragraph 265 above in their entirety, as the factual support for this claim.

311.    Plaintiff shows he sought to appeal his wrongful termination through Defendant City's grievance process and by appealing to the City Council, but his requests to appeal were refused.

312.    Defendants denied Plaintiff of his statutory right to have his grievance heard by a person in a position of authority is a violation of TEXAS GOVERNMENT CODE § 617.005.

313.    Defendant City's ordinances, regulations, rules, policies and/or procedures depriving Plaintiff of his grievance rights violate TEXAS GOVERNMENT CODE § 617.005.

314.    Plaintiff seek an order compelling Defendant City to hear and consider his grievance.

315.    Plaintiff seeks in equity to compel actual consideration of Plaintiff's grievances by a person who actually has authority to remedy the grievance issues raised by Plaintiff, including Plaintiff's complaints about the still continuing, illegal course of conduct by Defendants and others who continue to object to Plaintiff's appeal of the fraudulent TCOLE F-5.

## VIOLATION OF TEXAS GOVERNMENT CODE § 614.023

316.    Plaintiff re-alleges and incorporates by reference all allegations in paragraph 18 to paragraph 227, and in paragraph 237 to paragraph 265 above in their entirety, as factual support for this claim.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 42**

317.    Plaintiff shows his wrongful termination by Defendants was accomplished in violation of

TEXAS GOVERNMENT CODE § 614.023, which provides, in part, as follows:

> **(b)  Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.**
>
> **(c)  In addition to the requirement of Subsection (b), the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:**
>
> > **(1)  the complaint is investigated; and**
> >
> > **(2)  there is evidence to prove the allegation of misconduct.**

318.    Defendants violated TEXAS GOVERNMENT CODE § 614.023, as follows:

a.    by taking disciplinary action without first providing a signed complaint;

b.    by terminating Plaintiff from employment based on the subject matter of the complaint, without first ensuring the complaint was investigated; and

c.    by terminating Plaintiff from employment based on the subject matter of the complaint, without first ensuring there was evidence to prove the allegation of misconduct.

319.    Plaintiff further alleges that Defendant City never had any evidence of misconduct.

320.    Plaintiff seeks an order compelling Defendant City to reinstate Plaintiff's employment due to Defendant City's failure to comply with TEXAS GOVERNMENT CODE § 614.023.

321.    Plaintiff seeks injunctive relief, declaratory relief and/or mandamus relief, to effect the cessation of all punishment and retaliation for his speech and political activities, including Defendants' continuing objection to his appeal of the fraudulent TCOLE F-5.

### VIOLATION OF TEXAS LOCAL GOVERNMENT CODE § 180.001

322.    Plaintiff re-alleges and incorporates by reference all allegations in paragraph 18 to paragraph

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 43**

LEONARDAMENDEDCOMPLAINT1.wpd

227, and in paragraph 237 to paragraph 265 above in their entirety, as factual support for this claim.

323.    Plaintiff shows Defendants violated TEXAS LOCAL GOVERNMENT CODE § 180.001.

324.    Plaintiff seeks relief to stop these continuing violations of law.

## CIVIL CONSPIRACY

325.    Plaintiff re-alleges and incorporates by reference all allegations in paragraph 18 to paragraph

227, and in paragraph 237 to paragraph 265 above in their entirety, as factual support for this claim.

326.    Defendants engaged in a civil conspiracy to deprive Plaintiff of the opportunity to exercise

his constitutional and/or statutory rights, or Defendants, and others who are not Defendants, acted

in concert to punish and/or retaliate against Plaintiff for exercising his rights, including his free

speech right and his right to engage in political activity.

327.    Defendants and non-Defendants:

    a.    are two or more persons;

    b.    had an objective to deny civil service protection to Burkburnett police officers;

    c.    had a meeting of minds on their objective or course of action, including to harass and retaliate against Plaintiff for his efforts to obtain civil service protection to Burkburnett police officers;

    d.    engaged in one or more unlawful, overt acts, including official oppression, the wrongful termination of Plaintiff for his speech and political activities, and the issuance of a fraudulent TCOLE F-5; and

    e.    Plaintiff suffered damages as a proximate result of Defendants' illegal conduct.[13]

328.    The Defendants' illegal conduct is continuing and Plaintiff is entitled to equitable remedies,

including injunctive relief, declaratory relief and/or mandamus relief to stop the illegal conduct,

---

[13]*Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019); and *Pfannstiel v. City of Marion*, 918 F. 2d 1178, 1187 (5th Cir. 1990).

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 44**

LEONARDAMENDEDCOMPLAINT1.wpd

including but not limited to rescission of all punishment and retaliation for his speech and political activities, including his wrongful termination by Defendants, which illegal actions have damaged and/or deprived Plaintiff of his constitutionally protected civil rights.

329.    Plaintiff seeks to enjoin Defendants' still continuing, illegal retaliation against Plaintiff for exercising his free speech rights under the Texas Constitution and under the First Amendment to the U.S. Constitution, including retaliatory transfers; wrongful termination of Plaintiff; the illegal filing of a fraudulent government document with TCOLE, the "general discharge" TCOLE F-5 issued to Plaintiff; and the objection by Defendants to Plaintiff's appeal of the fraudulent TCOLE F-5.

## VIOLATION OF TEXAS LABOR CODE CHAPTER 101

330.    Plaintiff re-alleges and incorporates by reference all allegations in paragraph 18 to paragraph 227, and in paragraph 237 to paragraph 265 above in their entirety, as factual support for this claim.

330.    Plaintiff shows TEXAS LABOR CODE § 101.001 provides as follows:

**RIGHT TO ORGANIZE. All persons engaged in any kind of labor may associate and form trade unions and other organizations to protect themselves in their personal labor in their respective employment.**

331.    Plaintiff and other employees of Defendant City's Police Department associated as allowed by Texas law, as members of the Burkburnett Police Association.

332.    TEXAS LABOR CODE § 101.301 states as follows:

**INTERFERENCE WITH RIGHT TO WORK; LIABILITY.**

**(a)    The right of a person to work may not be denied or abridged because of membership or nonmembership in a labor union or other labor organization.**

**(b)    In the exercise of the right to work, each person shall be free from threats, force, intimidation, or coercion.**

**(c)    A person who violates this subchapter is liable to a person who suffers**

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 45**

LEONARDAMENDEDCOMPLAINT1.wpd

**from that violation for all resulting damages.**

333.    The individual Defendants and other agents and employees of Defendant City acted with "threats, force, intimidation, or coercion", to deny, and abridge Plaintiff's right to work due to Plaintiff's membership in a labor organization.

334.    Each of the individual Defendants should be held liable for Plaintiff's damages.

335.    TEXAS LABOR CODE § 101.203 states as follows:

**Sec. 101.203.  CIVIL LIABILITY.**

**(a)  A person who violates any provision of this subchapter is liable to a person damaged by the violation for the damages resulting from the violation.**

**(b)  A person damaged by a violation of this subchapter may maintain an action to redress the damage and may obtain injunctive relief.**

**(c)  An association or labor union that represents or purports to represent a person who violates any provision of this subchapter is jointly and severally liable with the person for the damages resulting from the violation.**

**(d)  In this section, "labor union" means any incorporated or unincorporated association, group, union, national or local, branch, or subordinate organization of a union of working persons organized and existing in part to protect those persons and to improve their working conditions, wages, or employment relationships and includes the local, state, national, and international affiliates of those organizations.**

336.    Plaintiff complains of Defendants' violations of TEXAS LABOR CODE, Chapter 101, and he seeks equitable relief, including injunctive relief, declaratory relief and/or mandamus relief as otherwise described in this pleading.

337.    Plaintiff suffered damages due to these violations of TEXAS LABOR CODE, Chapter 101.

## DECLARATORY JUDGMENT

338.    Plaintiff re-alleges and incorporates by reference all allegations in paragraph 18 to paragraph 227, and in paragraph 237 to paragraph 265 above in their entirety, as factual support for this claim.

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 46**

339.    Plaintiff seeks declaratory relief allowed under the TEXAS DECLARATORY JUDGMENT ACT and/or under 28 U.S.C. §2201.

340.    Plaintiff seeks declarations that Defendants' actions and/or ordinances, policies, practices or rules violated his rights under the U.S. and Texas Constitutions.

341.    Plaintiff's requested equitable relief is allowed under Texas law and federal law.

342.    Plaintiff seeks the following declarations pursuant to TEX. CIV. PRAC. & REM. CODE § 37.001 *et seq.* and/or under 28 U.S.C. §2201:

a.    That Defendant City's failure to provide grievance hearings for employee terminations violates TEXAS GOVERNMENT CODE § 617.005;

b.    That the statutory grievance rights of public employees under TEXAS GOVERNMENT CODE § 617.005, includes the right of the public employee to actually be heard by a person and/or persons in a position of authority to remedy the grievance(s);

c.    Defendant City's policy of refusing grievance hearings for employee terminations violates Plaintiff's fundamental right to petition guaranteed by the Texas Constitution, Art. I, § 27 and by the First Amendment;

d.    That fundamental right to petition guaranteed by the Texas Constitution, Art. I, § 27 and by the First Amendment, includes the right to actually be heard by those invested with the power to remedy any petition(s);

e.    The retaliation against Plaintiff, including his termination for exercising his free speech right and/or for engaging in protected political activities, without notice or hearing and without due course of law, improperly infringes on constitutional rights and is illegal and void;

f.    The punishment and retaliation by Defendants against Plaintiff, including his termination, for exercising his free speech right and/or for engaging in protected political activities, deprives Plaintiff of equal rights under law and is illegal and void;

g.    Plaintiff's termination from employment without first providing him a signed copy of the complaint against him violates TEXAS GOVERNMENT CODE § 614.023 and is illegal and void;

h.    That Plaintiff's termination from employment at the Burkburnett Police Department

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 47**

LEONARDAMENDEDCOMPLAINT1.wpd

based on the subject matter of a complaint, without first investigating the complaint violates TEXAS GOVERNMENT CODE § 614.023 and is illegal and void;

i.    That Plaintiff's termination from employment at the Burkburnett Police Department based on the subject matter of the complaint, without first ensuring there was evidence to prove any allegation of misconduct violates TEXAS GOVERNMENT CODE § 614.023 and is illegal and void;

j.    That Plaintiff's termination from employment at the Burkburnett Police Department based on the subject matter of the complaint, without evidence to prove any allegation of misconduct violates TEXAS GOVERNMENT CODE § 614.023 and is illegal and void;

k.    That the procedural rights of Texas peace officers under TEXAS GOVERNMENT CODE § 614.023, includes the right of the public employee to not be terminated for alleged misconduct without the due process protections of notice, right to investigation, the right to respond and the requirement of evidence to prove misconduct before any termination for alleged misconduct;

l.    That Plaintiff is entitled to all procedural protections provided by the City of Burkburnett, Texas Personnel Policy Handbook, as adopted in Resolution Number 643 of the Board of Commissioners of the City of Burkburnett, Texas, including that Plaintiff is entitled to receive a copy of the Personnel Policy Handbook;

m.    That Plaintiff is entitled to an interpretation by the Court of Resolution Number 643;

n.    That Plaintiff is entitled to utilize any and all grievance or appeal procedures available under the City of Burkburnett, Texas Personnel Policy Handbook, as adopted in Resolution Number 643 of the Board of Commissioners of the City of Burkburnett, Texas; and

o.    That Plaintiff be reinstated as an employee of the Burkburnett Police Department at his former rank of Sergeant, with all attributes and seniority of that rank and position.

## PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION

343.    Plaintiff re-alleges and incorporates by reference all allegations in paragraph 18 to paragraph 227, and in paragraph 237 to paragraph 265 above in their entirety, as factual support for this claim.

344.    Plaintiff satisfies the requirements under Texas law and federal law to obtain injunctive relief because he has causes of action against Defendants; he has a probable right to recover; he can show

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 48**

probable, imminent, and irreparable harm; and he has no adequate remedy at law.

345.    Plaintiff is entitled to the equitable and injunctive relief sought, as all or part of the relief requires the restraint of some act prejudicial to Plaintiff.

346.    Defendants are taking action presently in violation of the rights of Plaintiff, which cause harms inflicted upon Plaintiff by Defendants that are irreparable harms.

347.    Plaintiff's injuries and damages are "irreparable" as they "cannot be adequately compensated in damages" or they "cannot be measured by any certain pecuniary standard."[14]

348.    Plaintiff is entitled to a writ of injunction under the principles of equity and under Texas law and federal law relating to injunctions.

349.    Plaintiff will verify the factual allegations stated in this Petition to support his request for injunction made under TEXAS RULE OF CIVIL PROCEDURE 682 and/or under federal law.

350.    Plaintiff will post a bond to obtain issuance of all necessary writs and orders.

351.    Plaintiff seeks an injunction requiring:

    a.    Defendant City must provide grievance hearings for employee terminations;

    b.    Defendant City must provide the statutory grievance rights to public employees as required under TEXAS GOVERNMENT CODE § 617.005, including the right of the public employee to actually be heard by a person and/or persons in a position of authority to remedy the grievance(s);

    c.    Defendant City must provide grievance hearings for employee terminations;

    d.    Defendants cease the punishment and retaliation against Plaintiff, including his termination, for exercising his free speech right and/or for engaging in protected political activities;

    e.    that Defendants cease still continuing punishment and retaliation against Plaintiff due to its effect of depriving Plaintiff's equal rights under law;

---

[14]*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002).

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 49**

LEONARDAMENDEDCOMPLAINT1.wpd

f.  Defendants comply with all procedural requirements of TEXAS GOVERNMENT CODE § 614.023, including by providing a signed complaint, investigating the complaint, and ensuring there is evidence to prove any allegation of misconduct before any termination;

g.  Defendant City must provide Plaintiff all procedural protections under the City's Personnel Policy Handbook, as adopted in Resolution Number 643 of the Burkburnett Board of Commissioners, including that Plaintiff be given a copy of the Personnel Policy Handbook;

h.  Plaintiff is entitled use of any and all grievance or appeal procedures available under City of Burkburnett, Texas Personnel Policy Handbook, as adopted in Resolution Number 643 of the Board of Commissioners of the City of Burkburnett, Texas; and

i.  Plaintiff be reinstated to employment at the Burkburnett Police Department at his former rank of Sergeant, with all benefits and seniority of that rank and position.

## WRIT OF MANDAMUS

352.  Plaintiff re-alleges and incorporates by reference all allegations in paragraph 18 to paragraph 227, and in paragraph 237 to paragraph 265 above in their entirety, as factual support for this claim.

353.  Plaintiff appealed punishment and retaliation by Defendants, his grievances were not heard, and he seeks mandamus relief to compel the hearing of his grievances by Defendants.

354.  Mandamus relief is proper as *ultra vires* conduct, even government inaction - refusal by Defendants to hear Plaintiff's grievance, may be corrected by writ of mandamus to require Defendants' compliance with Texas law[15]; and mandamus relief to compel a government official to perform a nondiscretionary act, is allowed when there is no other adequate remedy by law."[16]

355.  "An appeal from an original proceeding for a writ of mandamus initiated in the trial court ...

---

[15]*Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W. 3d 553 (Tex. 2018); and *Tex. Dep't of Transp. v. Sefzik* , 355 S.W.3d 618, 622 n.2 (Tex. 2011)

[16]*In re Essex Ins. Co.* , 450 S.W.3d 524, 526 (Tex. 2014) (quoting *Walker v. Packer* , 827 S.W.2d 833, 839 (Tex. 1992)

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 50**

LEONARDAMENDEDCOMPLAINT1.wpd

is different from an original proceeding for a writ of mandamus filed in an appellate court.[17]  This

proceeding for writ of mandamus, initiated by Plaintiff in the trial court, is a civil action subject to

trial and appeal on substantive law issues and the rules of procedure as any other civil suit.[18]

356.    Despite attempts by Plaintiff to obtain correction of the Defendants' illegal conduct,

Defendants City, Cutrone, Stahr, Tillman, and Guevara all continue to violate Texas laws; they

continue to infringe on Plaintiff's rights, which causes irreparable injury and harms to Plaintiff.

Plaintiff seeks a writ of mandamus requiring the following:

     a.     Defendant City must provide grievance hearings for employee terminations;

     b.     Defendant City must provide the statutory grievance rights to public employees as required under TEXAS GOVERNMENT CODE § 617.005, including the right of the public employee to actually be heard by a person and/or persons in a position of authority to remedy the grievance(s);

     c.     Defendant City must provide grievance hearings for employee terminations;

     d.     Defendants cease punishment and retaliation against Plaintiff, including termination, for exercising his free speech right and for engaging in protected political activities;

     e.     that Defendants cease still continuing punishment and retaliation against Plaintiff due to its effect of depriving Plaintiff's equal rights under law;

     f.     Defendants comply with procedural requirements of TEXAS GOVERNMENT CODE § 614.023, including providing a signed complaint, investigating the complaint, and ensuring evidence exists to prove an allegation of misconduct before any discipline;

     g.     Defendant City must provide Plaintiff all procedural protections under the City's Personnel Policy Handbook, as adopted in Resolution Number 643 of the Burkburnett Board of Commissioners, including that Plaintiff be given a copy of the Personnel Policy Handbook;

     h.     Plaintiff is entitled use of any and all grievance or appeal procedures available under

---

[17]*Anderson v. City of Seven Points*, 806 S.W.2d 791, 792 n1 (Tex. 1991)

[18]*Id.*

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 51**

City of Burkburnett, Texas Personnel Policy Handbook, as adopted in Resolution Number 643 of the Board of Commissioners of the City of Burkburnett, Texas; and

i.    Plaintiff be reinstated to employment at the Burkburnett Police Department at his former rank of Sergeant, with all benefits and seniority of that rank and position.

## EQUITABLE REMEDY OF REINSTATEMENT

357.    Plaintiff re-alleges and incorporates by reference all allegations in paragraph 18 to paragraph 227, and in paragraph 237 to paragraph 265 above in their entirety, as factual support for this claim.

358.    In *City of Fort Worth v. Jacobs*, the Fort Worth Court of Appeals recognized that suits for equitable remedies for violation of constitutional rights are not prohibited.[19]

359.    Plaintiff seeks "[r]einstatement [a]s an equitable remedy per se."[20]

360.    This Court "possesses jurisdiction over [Leonard's] claims for state constitutional violations that seek the equitable remedy of reinstatement.

361.    Plaintiff seeks reinstatement to employment at the Burkburnett Police Department at his former rank of Sergeant, with all attributes and seniority of his former rank and position.

## DAMAGES

362.    Plaintiff's professional reputation has been and will continue to be irreparably harmed by Defendants' illegal conduct, which damages are not subject to calculation.

363.    Plaintiff also seeks all of his economic damages under Texas law and federal law.

## ATTORNEY'S FEES

364.    Plaintiff seek attorney's fees and costs under 42 U.S.C. § 1983, under TEX. CIV. PRAC. & REM. CODE § 37.001 *et seq.*, under TEXAS GOVERNMENT CODE § 551.142(b), and/or any other

---

[19]382 S.W.3d 597, 598-599 (Tex. App.-Fort Worth 2012) (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148-49 (Tex.1995) (emphasis added).

[20]*Id.* at 599. (emphasis added).

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 52**

LEONARDAMENDEDCOMPLAINT1.wpd

applicable statute.

## JURY DEMAND

365.    Plaintiff requests a jury trial in this case.

WHEREFORE, Plaintiff Zachary D. Leonard requests that upon final jury trial, he have judgment against Defendants City of Burkburnett, Texas, Lawrence Cutrone, Ed Stahr, Michael Guevara, and Fred Tillman, for the equitable relief sought, including reinstatement, injunction, writ of mandamus, and declaratory judgment, for reasonable attorney's fees, pre-judgment and post-judgment interest, costs of suit and for such other relief to which Plaintiff is justly entitled.

Respectfully submitted,

LAW OFFICES OF WILLIAM J. DUNLEAVY

 s/ *William J. Dunleavy*

William J. Dunleavy
State Bar No. 00787404
2435 North Central Expressway
12th Floor
Richardson, Texas 75080
Telephone No. 972/247-9200
Facsimile No. 972/247-9201
Email: bill@williamjdunleavy.com

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF FILING AND SERVICE

I certify that on February 26, 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court Northern District of Texas, using the electronic case filing system of the court, which served a copy of this pleading on counsel of record for Defendants.

 s/ *William J. Dunleavy*

William J. Dunleavy

**PLAINTIFF'S FIRST AMENDED COMPLAINT - Page 53**

LEONARDAMENDEDCOMPLAINT1.wpd